2002 ME 135

**In re JEREMIAH Y.**

Supreme Judicial Court of Maine.

Submitted on Briefs: July 22, 2002.
Decided: Aug. 15, 2002.

Caroline J. Gardiner, Portland, for appellant.

G. Steven Rowe, Attorney General, David F. Hathaway, Asst. Attorney General, Michael C. Kearney, Asst. Attorney General, Augusta, for appellees.

Diane Edgecomb, Gorham, Guardian ad Litem.

Kevin Gordon, Pierce Atwood, Gregory Brown, Portland, for intervenors.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] The mother of Jeremiah Y. appeals from the judgment entered in the District Court (Portland, *Goranites, J.*) terminating her parental rights to her son. She argues (1) that the Department of Human Services (DHS) prematurely filed its petition to terminate her parental rights under 22 M.R.S.A. § 4052(2–A) (Supp.2001), and (2) that the evidence was insufficient to support the judgment. Finding no error, we affirm the judgment.

## I. STATEMENT OF THE CASE

[¶ 2] In September of 1999, Jeremiah Y., who was three months old at the time, was brought to a hospital after multiple bruises were discovered on his body. According to the child's mother, her ex-husband, a man with an extensive criminal history, inflicted the injuries. In October of 1999, DHS sought and received a Preliminary Child Protection Order that granted temporary custody of Jeremiah to DHS. Jeremiah was placed in foster care. In November of 1999, the District Court issued a Jeopardy Order that placed custody of Jeremiah with DHS and ordered his mother to participate in a parental capacity evaluation and other reunification services, including domestic violence awareness counselling.

[¶ 3] Jeremiah was returned to his mother's care for trial placements on two occasions, once in February of 2000 and again in December of the same year. These trial placements were terminated after Jeremiah's mother continued to have relationships with men who had histories of criminal activity and drug abuse. Also, during the second trial placement, Jeremiah suffered numerous accidental injuries. After the second trial placement was terminated, additional reunification services were granted. These services included further counselling, a second psychological evaluation, and further parental assessments.

[¶ 4] In March of 2001, without having sought authorization to cease reunification efforts, DHS filed a petition for the termination of parental rights. After a four-day hearing, in January of 2002, the court determined that Jeremiah's mother "has not learned from the multitude of services provided because she continues to associate exclusively with men who pose a risk to the safety of her child." The court found that she was unwilling or unable to protect Jeremiah from jeopardy and unwilling or unable to take responsibility for him. The court concluded that these circumstances are unlikely to change within a time that is reasonably calculated to meet his needs, and that the termination of her parental rights is in her son's best interests. The mother appealed from this judgment.

## II. DISCUSSION

[¶ 5] Jeremiah's mother argues that DHS prematurely filed its petition to terminate her parental rights. Specifically, she argues that 22 M.R.S.A. § 4052 (Supp. 2001) does not permit the Department to seek a termination order until one of the conditions of subsection (2–A) has been satisfied.

[¶ 6] Petitions for the termination of parental rights are brought pursuant to 22 M.R.S.A. § 4052, which provides, in pertinent part:

1. Petitioner. A termination petition *may* be brought by the custodian of the child or by the department.

. . . .

2–A. Department as petitioner or as party. The department *shall* file a termination petition or seek to be joined as a party to any pending petition in the following circumstances:

A. A child has been in foster care for 15 of the most recent 22 months. This paragraph does not apply if the department is required to undertake reunification efforts and the department has not provided to the family of the child such services as the department determines to be necessary for the safe return of the child to the child's home consistent with the time period in the case plan; or

B. A court order includes a finding of an aggravating factor and an order to cease reunification. (emphasis added).

■ [¶ 7] Statutory interpretation is a question of law that we afford de novo review. *In re Melanie S.*, 1998 ME 132, ¶ 4, 712 A.2d 1036, 1037. " 'In construing a statute our duty is to give effect to the intent of the Legislature as evidenced by the language of the statute. If the meaning of the language is plain, we must interpret the statute to mean exactly what it says.' " *In re Christopher J.*, 505 A.2d 795, 800 (Me.1986) (quoting *Stone v. Bd. of Registration in Med.*, 503 A.2d 222, 226 (Me.1986)).

[¶ 8] Subsection (1) broadly authorizes DHS to seek the termination of parental rights, and places no restraints upon when it can act. Subsection (2–A) requires DHS to seek the termination of parental rights when certain, specific circumstances arise. The Legislature's intent to free DHS from any such restrictions is made even more apparent given the fact that section 4052(2) formerly included restrictive language: "A termination petition may be brought no earlier than 3 months after disposition under section 4036 ...." 22 M.R.S.A. § 4052(2) (1992) (repealed by P.L.1997, ch. 715, § B–13). The statute's plain language is clear. None of the requirements of subsection (2–A) is required to be satisfied before DHS can file a petition for the termination of parental rights.[1]

[¶ 9] Further, contrary to the mother's contentions, there was sufficient evidence to support the court's judgment that she was unwilling or unable to protect Jeremiah from jeopardy and unwilling or unable to take responsibility for him, that these circumstances were unlikely to change within a time which was reasonably calculated to meet the child's needs, and that the termination of her parental rights were in her son's best interest. 22 M.R.S.A. § 4055(1)(B)(2)(a), (b)(i), (b)(ii) (1992).

The entry is:

Judgment affirmed.

---

1. Furthermore, we have previously noted that a failure by DHS to provide adequate reunification services will not preclude the termination of parental rights should the requirements of section 4055 be established by clear and convincing evidence. *In re Denise M.*, 670 A.2d 390, 394 n. 8 (Me.1996).